WIGGINTON, Acting Chief Judge.
Appellant as guardian seeks review of a summary final judgment rendered in favor of appellees which denied her prayer for relief and dismissed her complaint with prejudice. No contention is made that there exists a genuine issue of any material fact but appellant insists that the trial court erred in holding that appellees were entitled to judgment as a matter of law. The basic issue presented by this appeal raises the question of whether appellant is precluded under the equitable doctrines of estoppel and unclean hands from challenging the validity of the marriage between the grandfather of appellant’s wards and appellee Caretha Dixson. It is on a resolution of this question that our decision must turn.
From the following undisputed facts the legal posture of this case arises. Appellees Caretha Dixson and Johnnie Lee Dennard were married to each other on January 24, 1944, and lived together as husband and wife until their separation in the year 1958. Sometime in the year 1961 appellee Caretha Dixson met Dan Dixson, Sr., and developed a relationship which resulted in a proposal of marriage to Caretha by Dan. Caretha advised him that although separated, she was still married to Johnnie Lee Dennard. Dan persuaded Caretha to institute a divorce action against Johnnie Lee in order that she might be free to marry him. Dan furnished the funds for financing the divorce action and suggested the lawyer whom Caretha should employ to represent her in that proceeding. Caretha acceded to the wishes of Dan, secured the services of the lawyer whom he recommended, and paid the costs and fees of the *473 suit with funds supplied by Dan. At that time appellee Johnnie Lee was living in the State of New York and was constructively served with process by publication in the suit which was filed on October 23, 1961: This proceeding culminated in a final decree of divorce in favor of Caretha, rendered by the Circuit Court of Alachua County on January 9, 1962. Some three months later, on April 5, 1962, Caretha and Dan were married together in a religious ceremony, after which they lived and cohabited together as man and wife until the date of Dan’s death on August 13, 1965. During the latter period of their marriage a child was conceived by Caretha but was not born until October 2, 1965, some one and one-half months after Dan’s death.
Dan died leaving a last will and testament in which his deceased son, Otis Dix-son, was named as one of the residuary legatees and devisees. Otis Dixson was the father of the minor children who are represented herein by their guardian, the appellant. Appellee, Caretha, claims to be Dan’s lawful widow and entitled to a dower interest in the estate owned by him at the time of his death. Appellee, minor David Dixson, claims to be the putative son of Dan, entitled to share in his estate as one of his lawful heirs.
The case sub judice was instituted by appellant on April 8, 1969, in which she claims that the marriage between Dan Dix-son, the grandfather of her minor wards, and appellee, Caretha Dixson, was void and should be set aside because at the time of their marriage Caretha was still lawfully married to Johnnie Lee Dennard. Appellant grounds her position on the contention that Johnnie Lee was never legally served with process by publication in the divorce suit brought against him by Care-tha because the notice of the suit was not published for the length of time required by the statute, thereby depriving the trial court of jurisdiction over the person of Johnnie Lee in the action and rendering the final decree of divorce therein null, void, and of no effect. It is appellant’s position that as the heirs of their deceased father who was named as a residuary legatee and devisee under Dan’s will, her wards are entitled to share in the latter’s estate without diminution thereof by the claims of appellees Caretha as purported widow and David as purported putative son. In opposition to appellant’s motion for summary judgment, there was filed in the cause an affidavit signed by Johnnie Lee stating that he actually received notice of the divorce suit brought against him by Caretha at the time it was instituted, was fully aware of the purpose and significance of the action, and was of the opinion that after the final decree was rendered, his divorce was final and thereafter he was relieved of any further marital obligations incident to the marriage relationship.
In the judgment appealed the trial court found and held:
“Due to the doctrine of estoppel, as well as the doctrine of unclean hands, Dan Dixson, Sr., if living, could not question the validity of the Dennard divorce decree; and the plaintiffs who are in privity with Dan Dixson, Sr., through their deceased father, Otis Dixson, have no standing to do so. See: Annotation ‘Who other than party to divorce suit may attack validity of decree of divorce rendered therein’, 99 A.L.R., p. 1309.”
It is based upon the foregoing conclusion that the trial court rendered summary final judgment in favor of defendants.
As heretofore alluded to, the overriding-question presented by this appeal is whether the facts in this case preclude appellant from challenging the validity of the marriage between her wards’ deceased grandfather and appellee Caretha Dixson under the equitable doctrines of estoppel and unclean hands. Being in privity with their grandfather under whom they assert a claim to a portion of his estate, appellant’s wards are in no better legal position to challenge the validity of their grandfather’s marriage with Caretha than he would have been had he lived. The author *474 of Florida Jurisprudence, in the chapter on estoppel and waiver, says:
“Under the doctrine of equitable estop-pel heirs stand in the place of their ancestor. Thus the heir, being in privity with his ancestor, is bound by an estop-pel which was binding on the ancestor, to the extent of the estate of the ancestor passing to the heir.
“It is a general rule that if one’s ancestors would have been estopped he will be estopped. Where an ancestor was guilty of acts or conduct which would have created an estoppel against him, his heirs claiming through him are estopped * * [1]
This brings us to the query as to whether if Dan Dixson had lived, he could have been heard to question the validity of his marriage to Caretha. Because of the undisputed facts reflected by the record' in this case, we believe he could not have successfully prevailed on this issue.
It was at Dan’s insistence that Caretha instituted the divorce action against her husband, Johnnie Lee, so that she could be free to marry Dan. He not only engineered the entire plan but furnished the money to finance the litigation and selected the lawyer to represent Caretha. Conceding for the sake of argument that the failure of the attorney representing Caretha to properly effectuate service of process by publication on Johnnie Lee in that action which deprived the court of jurisdiction and rendered the decree null, void and of no effect, there is no hint or suggestion that Caretha was responsible for or even knew of this defect in service of process or the effect it would have on her final decree of divorce. No element of fraud or deception on her part is suggested or reflected by the evidence. Dan entered into a ceremonial marriage with Caretha within a few months after the final decree of divorce was rendered, and oohabited with her for more than three years prior to the time of his death. During the period of their marriage Dan enjoyed all the benefits accruing from their marital relationship, and at no time questioned the validity of their marriage. Appellee David Dixson was born of the marriage between Dan and Caretha, although the date of his birth did not occur until after Dan’s death. It was not until more than seven years after the marriage between Dan and Caretha, and almost four years after Dan’s death, that the legality of their marriage was brought into question by this action. It was at Dan’s specific request, and in accordance with the plan conceived and effectuated by him, that Caretha materially changed her position by seeking a divorce from her husband, entering into a ceremonial marriage with Dan, and thereafter living and cohabiting with him as a husband and wife for more than three years, during which she bore him a child. It was because of Dan’s affirmative actions in the premises that appellee David Dixson was brought into this world and became endowed with every right to legitimacy which the law may properly bestow. Ap-pellee Johnnie Lee materially changed his position in reliance upon the decree of divorce rendered at Caretha’s behest on January 9, 1962, by thereafter pursuing and exercising those privileges available to an unmarried man free from any marital obligations to a living wife. To grant the prayer of appellant’s complaint by holding that the marriage between her wards’ grandfather, Dan, and appellee Caretha should be annulled and set aside because of the defect in the divorce proceedings which resulted in a void final decree therein would be to place the judicial stamp of meretriciousness upon the relationship between Dan and Caretha, to brand Caretha an adulteress, and to bastardize the minor ap-pellee, David. It is unthinkable that a court of equity would grant such relief to Dan if he were now living, and appellant *475 is in no better position to demand that such relief be afforded her.
If Dan, ancestor of appellant’s wards, had sought a judgment invalidating his marriage with Caretha on the ground that the divorce which she secured against Johnnie Lee was void because of a jurisdictional defect, he would have been in somewhat the same position as was the plaintiff in the case of Grace v. Grace[2] decided by this court in 1964. In that case plaintiff husband brought suit to have his marriage with his defendant wife annulled and set aside on the ground that the divorce decree which his wife purportedly secured from a former husband was void because of a jurisdictional defect. In denying the relief sought, this court said:
“Appellant’s conduct in accepting the benefits of the marriage which he now attempts to invalidate may not in law amount to an estoppel against him to raise the question, but it is a circumstance which cannot be entirely ignored, for he certainly does not raise the question with ‘clean hands’. If the law permitted a spouse to do this, it would, in the words of the California Court in Harlan v. Harlan, 70 Cal.App.2d 657, 161 P.2d 490, amount to ‘flagrant invitation to others to attempt to circumvent the law, cohabit in unlawful state, and when tired of such situation, apply to the courts for a release from the indicia of the marriage status.’ ”
If Dan would have been precluded from challenging the validity of his marriage with Caretha because of the equitable doctrines of estoppel and unclean hands, then the same principle would be applicable to appellant’s wards who stand in privity with him and would preclude them from procuring the relief which they seek.
One of the points on appeal urged by appellant is that the trial court erred in holding that her wards have no standing to question the legality of the divorce between Caretha and Johnnie Lee. We do not consider it necessary to either reach or pass upon this question because whether such right exists or not is irrelevant. If appellant has no standing to challenge the validity of Dan’s marriage to Caretha, then whether the latter’s divorce from Johnnie Lee is valid or invalid is of no material consequence.
For the foregoing reasons, the judgment appealed is affirmed.
CARROLL, DONALD K., and RAWLS, JJ., concur.

. 12 Fla.Jur. 465, 466, Estoppel and Waiver, § 76; see also Watkins v. Emmerson, 88 Fla. 86, 102 So. 10.

. Grace v. Grace, (Fla.App.1964) 162 Si>.2d 314, 318.